FILED
**United States Court of Appeals**
**Tenth Circuit**

**July 1, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

———————————————

JOWANNA HUDSON, on behalf of
herself and others similarly situated,

    Plaintiff - Appellant,

v.

THE BOPPY COMPANY, LLC,

    Defendant - Appellee.

No. 24-1322
(D.C. No. 1:23-CV-01538-DDD-SBP)
(D. Colo.)

———————————————

**ORDER AND JUDGMENT\***

———————————————

Before **PHILLIPS**, **ROSSMAN**, and **FEDERICO**, Circuit Judges.

———————————————

There was a national recall of newborn lounger pillows in 2021 after

eight infant deaths revealed safety risks from this product. Plaintiff

Jowanna Hudson was a consumer of the product, which she purchased and

used for her infant without incident prior to the recall. Following the recall,

Hudson filed a putative class action lawsuit against The Boppy Company,

LLC (Boppy), alleging breach of warranties and unjust enrichment. The

---

    \* This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be
cited, however, for its persuasive value consistent with Federal Rule of
Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

district court dismissed her Second Amended Complaint (Complaint) for failure to state a claim and entered final judgment. Hudson timely appeals the dismissal. Because we conclude that Hudson lacks standing, we affirm.

**I**

Hudson filed a putative class action lawsuit against Boppy in the United States District Court for the District of Colorado. Hudson alleged that, although Boppy's newborn lounger products were sold widely across America, three million of these loungers were voluntarily recalled in 2021 by Boppy and the United States Consumer Product Safety Commission (CPSC) after eight infant deaths related to use of the product were uncovered. Hudson pointed to reports of babies potentially suffocating if placed in the loungers on their backs, sides, or stomachs. She contended that Boppy misled millions of Americans into buying the loungers by falsely claiming that the product was safe. Based on these allegations, Hudson asserted four claims for relief against Boppy: one claim for breach of express warranty, two claims for breach of implied warranties, and one claim for unjust enrichment.

Hudson's allegations about her own newborn lounger purchase were thin. She alleged that she purchased a Boppy lounger in 2018 at a Walmart store in Georgia and used the product for five months with her newborn child. She failed, however, (1) to allege further details about her purchase,

(2) to claim that prior to making her purchase that she viewed any Boppy advertisements, statements, or warnings, and (3) to allege her own reliance on any alleged false or misleading Boppy advertisement, statement, or warning.

Hudson's lawsuit focused on four statements made on Boppy's website:

1.) Boppy's statement that it "has been committed to the safety of infants";

2.) Boppy's statement that it "is committed to doing everything possible to help make babies safer";

3.) Boppy's characterization of the newborn loungers as a "safe place to set newborn down for hands-free movement[1]"; and

4.) Boppy's characterization of the "recessed interior" of the lounger as a place where any infant would fit "perfectly."

App. at 11–13. In her Complaint, Hudson heavily emphasized the first two statements, which were referred to as "The Boppy Pledge." *Id.* at 11. The Boppy Pledge was published on April 23, 2021. Part of The Boppy Pledge, as seen on the company's website, states:

---

[1] As the district court noted, Hudson misquoted the Boppy website by alleging that Boppy made statements that the loungers allowed for a hands-free *movement*. App. at 82 n.2. Instead, as the district court pointed out, the website stated that the loungers could be used for a hands-free *moment*. *Id.*



Since our beginning, Boppy has been committed to the safety of infants. Boppy® products are designed by women and mothers to provide the most support possible. From nursing solutions to a hands-free moment, we're here to support moms and want to ensure Boppy product(s) are being used correctly and confidently...because there are enough unknowns in parenting!

*Id.* at 12.

In short, Hudson alleged that Boppy promised a safe product but delivered something far less. But Hudson failed to allege she was aware of the alleged four online statements, and two of the four statements were not published until 2021, several years after her 2018 purchase.

Boppy filed a motion to dismiss Hudson's Second Amended Complaint. It argued that Hudson failed to plead any actionable misstatement by Boppy or a cognizable individual injury, and therefore, lacked Article III standing. Even though Hudson had filed three versions of the complaint, Boppy contended that Hudson's operative pleading "still does not specify any Boppy packaging, labeling, or other statement that she ***personally*** saw and relied on while purchasing her Newborn Lounger." App. at 38 (emphasis in original). It argued that "[b]y not tying Boppy's actions to any cognizable injury as to herself personally, Ms. Hudson lacks standing and fails to plead core elements of her claims." *Id.*; *see also id.* at 44 ("Ms.

4

Hudson lacks standing to assert her claims because she does not identify any specific Boppy warranty, advertisement, or other statement that she supposedly relied upon when purchasing her Newborn Lounger.").

The district court granted Boppy's motion and dismissed Hudson's Complaint against Boppy with prejudice. In the dismissal order, the district court analyzed the Complaint under the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim upon which relief may be granted. It rejected Hudson's "one central allegation" – i.e., that she "and the members of her purported class were misled by Boppy's advertising" and never would have purchased the Boppy newborn lounger "had they been aware of [its] safety issues." App. at 80. Instead, it held that Hudson failed to allege any facts or statements beyond mere puffery (which is not actionable) and to advance past the motion to dismiss, Hudson needed to allege that Boppy made false or misleading statements of fact. The district court further held that Boppy's express warnings on the product packaging contradicted the generic statements of safety published on Boppy's website, independently defeating all of Hudson's claims for relief.

Although it did not engage extensively with standing, the district court also pointed out that Hudson failed to allege a cognizable injury. While Hudson's pleading states that she was refunded "roughly $9 out of the original $30 purchase price," she "does not allege anywhere in her

complaint that her three years of ownership, which included five months of daily use from a product intended for infants, did not provide her with at least $21 in value." *Id.* at 83 n.3.

The district court granted the motion to dismiss with prejudice and then entered final judgment.[2] We therefore have jurisdiction under 28 U.S.C. § 1291.

## II

Article III of the United States Constitution limits the jurisdiction of the federal courts to review only "[c]ases" and "[c]ontroversies." U.S. Const. art. III, § 2, cl. 1. And "[t]here is no case or controversy unless the plaintiff has standing." *Bertels v. Farm Bureau Prop. & Cas. Ins. Co.*, 123 F.4th 1068, 1073–74 (10th Cir. 2024); *see also FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024) (same). "To establish standing, a plaintiff must demonstrate (i) that she has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief." *Bertels*, 123 F.4th at 1074 (quoting *All. for Hippocratic Med.*, 602 U.S. at 380).

---

[2] Because the operative Complaint was dismissed with prejudice at the pleading stage, Hudson had not yet moved for class certification.

The filing of a class action does not alleviate the named plaintiff's burden to establish standing. Before a putative class action can proceed, the named plaintiff, who seeks to later be the class representative, "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Warth v. Seldin*, 422 U.S. 490, 502 (1975); *see also Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 n.6 (2016) (same). Unless the named plaintiff can "demonstrate the requisite case or controversy between themselves personally and respondents, 'none may seek relief on behalf of himself or any other member of the class.'" *Warth*, 422 U.S. at 502.

On appeal, Boppy reasserts its standing argument, focusing on the second standing factor, traceability (also known as causation). Boppy argues that Hudson "did not plead any facts to plausibly show how an alleged economic injury was traceable from any purportedly misleading thing that Boppy did to her *personally*. Put simply, Ms. Hudson failed to meet the causation requirement for Article III standing." Resp. Br. at 37 (emphasis in original).

As an initial matter, Hudson argues in her Reply Brief that Boppy's standing argument is new and creates a "separate issue regarding standing and causation that was not argued by Plaintiff to attempt to gain a

dismissal of Plaintiff's claims." Reply Br. at 13. Which is to say, Hudson argues that we "should deem the standing issue as conceded by [Boppy] and reverse the district court on this issue." *Id.*

We respectfully disagree. First, the district court dismissed Hudson's Second Amended Complaint for failure to state a claim under Rule 12(b)(6), not on standing, and we hesitate to reverse the district court on an issue it did not rule upon. Second, Boppy's standing argument was broader than alleging that Hudson did not suffer an injury. Although Boppy did spotlight that Hudson failed "to plead a cognizable individual *injury* that is tethered to any Boppy conduct," App. at 44 (emphasis added), it also presented and quoted case law from the District of Colorado that discussed traceability. In these cases, the plaintiff lacked standing and could not "plead his case by pointing to many advertisements he did not see," because they "could not have *caused* him individual injury." *Id.* at 43 (emphasis added) (quoting *Sanchez v. Ford Motor Co.*, No. 13-CV-01924, 2014 WL 2218278 at *2 (D. Colo. May 29, 2014)).

Although we generally do not allow arguments to be raised for the first time on appeal, we can reach issues that were either "pressed" by a party before the district court or "passed upon" by the district court. *Tesone* v. *Empire Mktg. Strategies*, 942 F.3d 979, 992 (10th Cir. 2019) (citation omitted). The "pressed" exception to the general rule against new

arguments applies here. Even if Boppy's argument to the district court focused more on the injury element of standing, it still brought forward case law to the district court that addressed traceability. That is sufficient to deem the traceability argument "pressed" by Boppy before the district court, and therefore sufficient for us to review this argument on appeal.[3]

Moreover, even if Boppy raised this argument for the first time on appeal (it did not), we would still be required to reach the question of whether traceability was adequately pleaded in the Second Amended Complaint. Because standing "raises jurisdictional questions," it cannot be waived, and "we are required to consider 'the issue sua sponte to ensure that there is an Article III case or controversy' before us." *Rector v. City & Cnty. of Denver*, 348 F.3d 935, 942 (10th Cir. 2003) (quoting *People for the Ethical Treatment of Animals v. Rasmussen*, 298 F.3d 1198, 1202 (10th Cir. 2002)); *see also Santa Fe All. for Pub. Health & Safety v. City of Santa Fe*, 993 F.3d 802, 813 n.5 (10th Cir. 2021) ("This argument ignores well-

---

[3] The district court's order could also be read to say that Hudson lacks standing, although the best reading is that the Second Amended Complaint was not dismissed on standing grounds. After all, it set out the legal standard under Federal Rule of Civil Procedure 12(b)(6) and thereafter engaged in an inquiry as to whether the Complaint included the essential elements of the claims raised. Regardless, because the standing traceability argument was "pressed" by Boppy before the district court, we need not tie ourselves in knots to determine whether it was "passed upon" by the district court.

established, black-letter law. The issue of Article III standing implicates federal jurisdiction and is a matter this court must consider sua sponte."). Finally, as the plaintiff invoking federal court jurisdiction, Hudson bears the burden to establish standing over each claim alleged in her lawsuit. *Sante Fe All.*, 993 F.3d at 813. At bottom, she failed to meet her burden here to prove her individual standing.

As a starting point, Hudson claims standing to sue on behalf of a class, yet she bought and used the Boppy product without any harm, injury, or issue from that use. Then, several years later, she learned of a voluntary recall of the product, which she then claimed and received a refund for the product she had used. Now she seeks to sue the manufacturer of the product for selling her a defective product from the outset.

Again, Hudson's theory of liability targets four Boppy statements published on the Boppy website. But Hudson does not allege that her in-store purchase of the Boppy lounger at a Walmart in 2018 had any connection to these four website statements, which were either not seen by Hudson prior to her purchase or were published years after her purchase. As Boppy argues and Hudson does not refute, "Hudson did not allege that she ever saw any of these statements firsthand or made a purchasing decision based on them." Resp. Br. at 16.

Hudson next claims she has standing based upon a "benefit of the bargain" theory. Op. Br. at 23. Both parties agree that monetary injury is sufficient to allege a concrete injury under an Article III standing analysis. *See, e.g.*, *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). Here, Hudson's argument is that she "is entitled to recover 'the difference between the actual value of the property and what its true value would have been had the [false] representation been true.'" Op. Br. at 23–24 (quoting *Ivar v. Elk River Partners*, LLC, 705 F. Supp. 2d. 1220, 1233 (D. Colo. 2010) (internal citations omitted)).

This court has never fully embraced or rejected a "benefit of the bargain" theory of injury in fact for purposes of Article III standing. This case presents no occasion for us to do so. Even if, arguendo, Hudson had adequately alleged a valid economic injury, she still failed to allege how this injury was caused by Boppy's statements when she did not see these statements until years after she bought and used the product.

Traceability is an essential element of standing, and "[a]t the very least, parties bringing a lawsuit must have suffered injury that is fairly traceable to the violation for which they seek redress." *Rector*, 348 F.3d at 942–43. To meet this element of standing, "a plaintiff must allege 'a substantial likelihood that the defendant's conduct caused plaintiff's injury in fact.'" *Sante Fe All.*, 993 F.3d at 814 (quoting *Nova Health Sys. v. Gandy*,

416 F.3d 1149, 1156 (10th Cir. 2005)). "[A]t the motion to dismiss stage, a plaintiff can satisfy the 'fairly traceable' requirement by advancing allegations which, if proven, allow for the conclusion that the challenged conduct is a 'but for' cause of the injury." *Id.* (quoting *Petrella v. Brownback*, 697 F.3d 1285, 1293 (10th Cir. 2012)).

The traceability requirement should not be conflated with the merits of a claim for relief. But in this case, Hudson has failed to allege any connection whatsoever between her 2018 in-store purchase of the newborn lounger and the four Boppy statements later published online on Boppy's website. She was not misled by any advertisements, statements, or warranties that she was not aware of at the time of the purchase. There is no obvious "but for" causation, and Hudson makes no effort to help us in closing this gap either in her Second Amended Complaint or on appeal. Put simply, Hudson's individual injury, if any, was not caused by Boppy's website statements.

We therefore conclude and hold that Hudson has failed to meet her burden to show traceability and, thus, lacks Article III standing. Because she lacks standing, we do not need to reach the question of whether Boppy's statements were actionable or mere puffery.

**AFFIRMED**.

Entered for the Court


Richard E.N. Federico
Circuit Judge